**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MICHAEL J. RICHARDS,** | ) NO. EDCV 15-00874-KS |
| **Plaintiff,** | ) |
| v. | ) **MEMORANDUM OPINION AND ORDER** |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | ) |
| **Defendant.** | ) |
| _____ | ) |

**INTRODUCTION**

Plaintiff filed a Complaint on May 4 2015, seeking review of the denial of his application for disability insurance benefits ("DIB"). (Dkt. No 1.) On November 23, 2015, Defendant filed an Answer to the Complaint (Dkt. No. 23) and a Certified Administrative Record ("A.R."). (Dkt. No. 24). On August 18, 2015, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkts. No. 15, 16.)   On May 5, 2016, the parties field a Joint Stipulation ("Joint Stip.). (Dkt. No. 31.)  The Court has taken the matter under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On February 10, 2011, Plaintiff filed an application for DIB alleging disability beginning February 1, 2008. (A.R. 167-75.) His application was denied on April 24, 2012 (A.R. 88-92) and on reconsideration on November 9, 2012 (*id*. at 96-101). Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ") Lawrence Duran on August 12, 2013. (A.R. 31-78.) Plaintiff was represented by counsel at the hearing and testified along with a medical expert, Dr. Stephen Kaplan, M.D., and a vocational expert ("VE"), Sandra Fioretti. (*Id*.) At the hearing, Plaintiff alleged an inability to work due to Hepatitis C, osteoarthritis, chronic obstructive pulmonary disease ("COPD"), sleep apnea, history of tremors, and depression. (A.R. 19; 56-62.) On August 15, 2013, the ALJ denied Plaintiff's claim. (A.R. 11-30.) Plaintiff unsuccessfully sought review before the Appeals Council (A.R. 1-6) and subsequently brought this civil action.

**SUMMARY OF ADMINISTRATIVE DECISION**

Applying the five step sequential evaluation process outlined in 20 C.F.R. §§ 404.1520(a) and 416.920(a), the ALJ determined that Plaintiff met the special earnings requirements for DIB through March 31, 2013 and had not engaged in substantial gainful activity from the alleged disability onset date of February 1, 2008. (A.R. 16.) The ALJ next found that Plaintiff suffered from medically determinable severe impairments consisting of: (1) osteoarthritis in the bilateral hips; (2) obstructive sleep apnea; (3) Gastroesophageal Reflux Disease ("GERD"); (4) hepatitis C; (5) major depressive disorder; and (6) anxiety. (*Id*.) The ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix. (*Id*. at 17.) At the next sequential step, the ALJ found that Plaintiff had the residual function capacity ("RFC") perform the demands of medium work, with limitations to: (1) lift and/or carry 50 pounds occasionally and 25 pounds frequently; (2)

stand and/or walk for six hours out of an eight-hour workday with regular breaks; (3) sit for six hours out of an eight-hour workday with regular breaks; (4) frequently climb stairs, balance, stoop, kneel, crouch, and crawl; (5) occasionally climb ladders, ropes, and scaffolds; (6) cannot perform fast paced work; (7) occasionally interact with co-workers, supervisors, and the public; and (8) can have no intense concentration for greater than 1 hour without a 5 minute break in focus. (A.R. 19 citing 20 C.F.R. § 404.1567.)

At step five of the evaluation process, the ALJ determined that Plaintiff was unable to perform any past relevant work (in sales at an auto dealership and furniture store (A.R. 196)), was closely approaching retirement age, and possessed a limited education and able to communicate in English. (A.R. 24.) However, the ALJ determined, after considering Plaintiff's age, education, work experience and RFC, and relying on the testimony of the VE, that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as hand packager, (DOT code 920.587-018), industrial cleaner (DOT code 381.687-018), and kitchen helper (DOT 318.687-010). (A.R. 25-26; 75.) On that basis, the ALJ concluded that Plaintiff had not been under a disability from the alleged onset date of February 1, 2008 though the date last insured of March 31, 2013. (A.R. 26.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's

findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health & Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

**A. Disputed Issue**

In challenging the ALJ's adverse decision, Plaintiff raises a single issue: "Whether the ALJ properly assessed probative medical source opinions." (Joint Stip. at 4.) Specifically, Plaintiff contends that the ALJ improperly rejected the opinions of Dr. Nizar Salek, M.D., a

4

consultative examiner, and Dr. Stephen Kaplan, M.D., the medical expert who testified during the hearing before the ALJ, and gave greater weight to the opinions of non-examining physicians. (*Id.* at 6-9.)  Drs. Salek and Kaplan opined that Plaintiff could perform work at the light level, while the remaining medical sources who assessed Plaintiff's ability to work, opined that Plaintiff was capable of medium work. (*Id.*)

The difference between light and medium work in this case appears to be whether Plaintiff can lift no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, or whether, as the ALJ concluded in the RFC determination, Plaintiff is capable of lifting and/or carrying 50 pounds occasionally and 25 pounds frequently.[1] Plaintiff seeks an order reversing the ALJ's final decision and an immediate award of benefits or, alternatively, remand for further administrative proceedings. (*Id.* at 13.)  Defendant requests that the ALJ decision be affirmed, or alternatively, that the matter be remanded for further proceedings. (*Id.* at 14.)

**B.  Legal Standard**

The Ninth Circuit distinguishes between three types of physician opinions: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) whose who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995).  The opinions of a treating physician are generally given more weight than the opinions of doctors who do

---

[1] Under agency regulations, "light work" involves "lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds." *See* 20 C.F.R. §§ 404.1567(b), 416.967(b); Social Security Ruling ("SSR") 85-15; 83-10; 83-14.  "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objections weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. 404.1567(c).  The ALJ assessed that Plaintiff was capable of lifting and/or carrying 50 pounds occasionally and 25 pounds frequently. (A.R. 19.)  When the ALJ queried the VE as to a hypothetical individual with Plaintiff's background limited to medium work, the VE stated that the individual would be able to perform jobs which existed in significant numbers in the national economy. (A.R. 74-75.)  However, when the hypothetical was altered to an assessment of light work, the VE testified that the individual would be unable to perform any work. (A.R. 76.)

5

not treat the claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Lester*, 81 F.3d at 830). The opinion of a non-examining physician normally is entitled to less deference than that of an examining and treating physician because the non-examining physician does not have the opportunity to conduct an independent examination and does not have a treatment relationship with the claimant. *See Andrews*, 53 F.3d at 1040-41(explaining that more weight is given to the opinions of treating and examining physicians because they have a greater opportunity to know and observe the patient as an individual). Standing alone, the opinion of a non-examining physician cannot constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999).

If a treating physician's opinion is uncontradicted, the ALJ must give clear and convincing reasons supported by substantial evidence for rejecting such an opinion. *Bayliss v. Barnhart*, 427 F. 3d 1211, 1216 (9th Cir. 2005). If contradicted by another doctor's opinion, a treating or examining source opinion can only be rejected for specific and legitimate reasons supported by substantial evidence in the record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148-49 (9th Cir. 2001); and *see Lester*, 81 F.3d at 830-31.

### C. Medical Opinion Evidence in the Record

On June 29, 2011, Dr. S. Moore, M.D. opined that "a current CE is needed in order to develop a function capacity assessment," and "depending on the current history and physical findings, x-rays of the hips and PFTs may be needed." (A.R. 294.) On August 16, 2011, Dr. Nizar Salek performed a complete internal medical evaluation and, in a typewritten report, assessed Plaintiff as limited to light work. (A.R. 295-302.) On November 23, 2011, Dr. Cochran, a non-examining physician, with a specialization in orthopedics (A.R. 322) completed a check-box form with a typewritten case analysis section in which she stated that

6

"program compliant spirometry is needed to" evaluate Plaintiff's Chronic obstructive pulmonary disease ("COPD"), but that his hepatitis, vision, essential tremor, hip pain, and pancreatitis did not result in disability. (A.R. 313.) On January 13, 2012, Dr. Cochran updated her analysis by reviewing the spirometry results that she found "shows a severe impairment but almost at the non severe level," and "[p]ulmonary insufficiency is a severe impairment that does not meet or equal a listing [e]ither singly or in combination with other severe [medically determinable illnesses]." (A.R. 322.) Furthermore, while Plaintiff submitted a letter indicating that he was jaundiced with increasing abdominal girth, Dr. Cochran found no medical evidence of record to support these complaints and no evidence of change in Plaintiff's liver function. (*Id.*)

On February 7, 2012, Dr. James Buskirk, M.D., specializing in psychiatry, stated that although Plaintiff was given diagnoses of depression and anxiety, he "appears to have no current psych treatment or medication," his activities of daily living "seem basically intact," there is insufficient evidence "to assess the severity of any limitations caused by mental issues," and his shortness of breath is "possibly secondary to anxiety." (A.R. 323.) On March 30, 2012, Dr. Robert A. Marselle, a licensed clinical psychologist performed a psychological evaluation and testing session and provided a medical source statement indicating that Plaintiff had no impairments in understanding, remembering, carrying out simple and detailed instructions, in making judgments in simple work-related decisions, but was mildly impaired in relating to others and in withstanding stress. (A.R. 327.) Non-examining psychologist, Dr. Martin Koretzky, PhD., completed a check box form on April 18, 2012, finding anxiety and depressive disorders, but ultimately opined that Plaintiff's mental impairments were non-severe. (A.R. 342.)

On November 1, 2012, Dr. V. Michelotti, assessed the same limitations as Dr. Cochran and opined that Plaintiff's mental impairments were "nonsevere" and his physical RFC was of "medium level." (A.R. 439-41.) On November 5, 2012, Dr. Yanira Olaya, M.D.

7

specializing in psychiatry, completed a check box form indicating no severe impairments, and the form appears to have been appended to or incorporated into Dr. Michelotti's Case Analysis.[2] (A.R. 442- 52.)

Aside from the opinions of examining and non-examining consultant physicians, there do not appear to be any medical source opinions on Plaintiff's RFC from Drs. Martinez, Lee, or Pasilio who treated Plaintiff regularly for his Hepatitis C, osteoarthritis, COPD, sleep apnea, depression, and other complaints at the Neighborhood Family Health Clinic in Temecula. (A.R. 248.) The opinions of examining physicians, Drs. Kaplan and Salek, who assessed a limitation to light work were contradicted by the opinions of non-examining physicians, Drs. Cochran and Michelotti, who assessed limitations to medium work. Therefore, the ALJ was required to give specific and legitimate reasons supported by substantial evidence for rejecting the opinions of Drs. Kaplan and Salek with respect to their opinions that Plaintiff was limited to light work. *See Batso*n, 359 F.3d at 1195.

### D. Dr. Kaplan's Medical Opinion

Consultative medical examiner, Dr. Kaplan, testified at the hearing before the ALJ that "[t]here is a frequent complaint of feeling tired. So that certainly sometimes that can be caused by psychological factors or –and sometimes it might tend to limit the claimant to a light work status rather than anything heavier, but nothing specific beyond that." (A.R. 44.) Dr. Kaplan clarified that the complaints of tiredness he referred to were documented in Exhibits 13F and 14F from May 25, 2010 to September 2012, and that these complaints were admittedly subjective in nature. (*Id*.) Based on his education, experience, training, and review of Plaintiff's medical records, Dr. Kaplan testified that Plaintiff's medical impairments, individually or in combination did not meet or equal any of the medical

---

[2] Dr. Olaya's check box form did not contain its own separate case analysis section. (S*ee* A.R. 441)

listings. (A.R. 43.) When asked to describe Plaintiff's functional limitations, Dr. Kaplan stated "there really isn't very much organically that's described," and though Plaintiff suffered from an "essential tremor, . . . it would not cause any impairment" and would not "interfere with either gross or fine manipulation."[3] (*Id.*)

The ALJ construed Dr. Kaplan's testimony that "a frequent complaint of feeling tired. . . might tend to limit the claimant to a light work status," as a limitation to light work and gave the opinion little weight. (*Id.*; A.R. 24.) Although Plaintiff complains that the ALJ rejected Dr. Kaplan's opinion (Joint Stip. at 7), the Court notes that the ALJ only rejected his opinion as to Plaintiff's RFC and accepted the remainder of his testimony "discussing whether [Plaintiff's] impairments meet a listing." (A.R. 24.) *See Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (ALJ may properly rely upon only selected portions of a medical opinion while rejecting other parts). Indeed, Dr. Kaplan's discussion of Plaintiff's impairments echoed the opinions of Drs. Cochran and Michelotti. (*See* A.R. 40-44; 313; 322; 440-41.) However, Dr. Kaplan assessed light work, and in rejecting that assessment, the ALJ provided specific and legitimate reasons supported by substantial evidence as described below. (A.R. 24.)

First, the ALJ found that Dr. Kaplan's opinion was "overly restrictive in light of the objective medical evidence, which shows generally unremarkable physical findings and generally unremarkable diagnostic findings, particularly only mild osteoarthritis and normal pulmonary function tests," and "minimal osteoarthritis of the hips, mild COPD symptoms improved with medications, and uncomplicated hepatitis C." (A.R. 23-24.) The ALJ cited substantial objective evidence in support of his conclusions, including lab tests for Hepatitis C, MRIs and x-rays in Exhibits 1F and 13F.

---

[3] Dr. Kaplan explained that "[e]ssential tremors usually mean that . . .at rest you have a tremor, but when you do something . . .the tremor can easily go away," as demonstrated in Plaintiff's case when he completed a "finger to nose examination." (A.R. 41-42.)

9

The lab findings from Hepatitis C tests since January 31, 2008 (A.R. 395), including on August 27, 2009 (A.R. 391-92), June 19, 2009 (A.R. 393) September 4, 2009 (A.R. 359, 390), April 1, 2011 (A.R. 364), and February 16, 2011 (A.R. 365) were consistent with a diagnosis of Hepatitis C, but were unremarkable as to findings on Plaintiff's exertional limitations stemming from Hepatitis C; a radiograph chest x-ray on September 29, 2011 to evaluate COPD noted "no active cardiopulmonary disease" and "mild" COPD (A.R. 360); an MRI of the right hip on June 4, 2009 to evaluate "chronic left hip pain," yielded "no evidence for marrow edema," "no significant joint effusion," "normal limits" and "mild degenerative joint space narrowing" of both hip joints, (A.R. 362), and a subsequent MRI of the right and left hip on March 14, 2011 showed no change, and yielded the impression of "early, fairly symmetrical degenerative changes bilaterally," but otherwise "minor," "minimal" or "no significant" results (A.R. 361).

On January 3, 2012, Plaintiff received a spirometry test that noted that his effort and cooperation during testing were "unsatisfactory," and he was "shaking when breathing out, was given water to help and he had trouble catching his breath." (A.R. 318.) The test result states that Plaintiff's "Lung Age is 113" and reflects "mild obstruction," (A.R. 319). Dr. Cochran viewed the spirometry results as "show[ing] a severe impairment but almost at the non severe level," and concluded that Plaintiff's "[p]ulmonary insufficiency is a severe impairment that does not meet or equal a listing." (A.R. 322.) Where the evidence may be susceptible to more than one rational interpretation, the Court is obligated to uphold the Commissioner's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Here, Dr. Kaplan appears to have interpreted the medical evidence in a manner similar to Dr. Cochran and Dr. Michelotti, but his ultimate opinion was an assessment of light work. On this record, the ALJ found that the medical record did not support finding any limitations due to Plaintiff's reported tremors and double vision. (A.R. 23.)

Second, the ALJ reasoned that Dr. Kaplan's assessment of light work was based primarily on Plaintiff's own subjective complaint of tiredness and his "allegations appear[ed] to be exaggerated and his credibility [was] diminished." (A.R. 24.) *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible."); *Morgan*, 169 F.3d at 602 ("A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'") (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)); *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433-34 (9th Cir. 1988) (per curiam) (stating that medical conclusions are entitled to less weight to the extent that they rely on the claimant's properly discounted subjective history); *but see Regennitter v. Comm'r Soc. Sec. Admin.,* 166 F.3d 1294, 1300 (9th Cir.1999) (substantial evidence did not support ALJ's finding that examining psychologists took plaintiff's "statements at face value" where psychologists' reports did not contain "any indication that [the claimant] was malingering or deceptive").

Dr. Kaplan's assessment was clearly based on Plaintiff's subjective complaints, (A.R. 44) and Plaintiff's credibility was properly discounted. Specifically, the ALJ pointed to inconsistent statements by Plaintiff about the reasons for restrictions on his driver's license and contradictions between Plaintiff's hearing testimony that his driver's license had never been suspended (A.R. 45) and statement in his Disability Report dated November 30, 2012 where he reported that his license was suspended "because DMV is questioning [his] ability to operate a vehicle." (*Id*.; 260.) Notably, Plaintiff does not challenge the ALJ's finding that Plaintiff's allegations were "less than fully credible." (A.R. 20.)

Third, the ALJ determined that an assessment of light work was inconsistent with other evidence, including Plaintiff's activities of daily living. (A.R. 24.) *See Tonapetyan*, 242 F.3d at 1149 (the ALJ is not required to give great weight to conclusions in medical

11

opinions that were inconsistent with the other evidence of record.) An ALJ is entitled to consider inconsistencies between a doctor's testimony and the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4)("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). The ALJ concluded Plaintiff's daily activities, as demonstrated by his hearing testimony and questionnaires completed by Plaintiff and his brother, were inconsistent with Dr. Kaplan's opinion that Plaintiff was limited to light work. (A.R. 20-21.) While daily activities are typically used by an ALJ to impeach a claimant's credibility, evidence of daily activities can also impeach a medical opinion. *See, e.g., Lunn v. Astrue*, 300 F. App'x 524, 525 (9th Cir. 2008) (example of a specific and legitimate reason supported by substantial evidence included an ALJ's rejection of a medical opinion partly because it was "contrary to [the plaintiff's] reports of her daily activities."); *see also Urvina v. Sullivan*, No. 91-35269, 1992 U.S. App. LEXIS 14958, *8 (9th Cir. June 19, 1992) (ALJ properly used testimony of a plaintiff's daily activities to impeach a medical opinion) (citing *Fair*, 885 F.2d at 597 (daily activities can properly be considered by the ALJ in determining whether an applicant can perform a particular type of labor)).

At the hearing, Plaintiff testified that he was able to perform his own personal hygiene (he testified that he only showered "probably once a week" because he "just do[es]n't feel like it," and not because he is physically unable to, (A.R. 47-48)), performed household chores such as sweeping (and mopping though "it wasn't easy" and made him tired (A.R. 48)), vacuuming, doing dishes in the dishwasher, and doing laundry. (*Id.*) Plaintiff shops for groceries on his own, carries bags himself (A.R. 50), watches TV (A.R. 51-52), goes to the library to borrow books and reads about three hours a day (A.R. 52), spends 45 minutes to an hour on the computer, on Facebook, checking emails and fantasy baseball scores (*id.*), "read[s] the paper a long time," and spends 3-4 hours a week playing keyboard and guitar (though he "can't strum [his] guitar very well anymore because of [his] tremors." (A.R. 53.) Plaintiff lives with his brother and his partner (A.R. 54), and took the

bus on his own to visit his other brother in Davis and visited his daughter in San Diego. (A.R. 53-54.) Plaintiff does not belong to any social organizations but attends church "maybe one time every four or six weeks" and "sit[s] for the time that the service is going on for [an] hour and a half," though he sometimes "squirms around and [would] like to stand up." (A.R. 55.)

Plaintiff's testimony is largely consistent with an Adult Function Report that he completed on March 9, 2011, in which he stated that his daily activates are reading the Californian Newspaper, washing dishes, vacuuming the floor, sitting in the backyard, reading NBC news online, and "other Googling," washing clothes, showering three times a week, talking on the telephone, "play[ing] piano sometimes," and watching TV at night after 7. (A.R. 215.) Plaintiff has no problems with personal care, prepares his own meals (though he has "less interest in preparing recipes" than he used to), and completes chores such as his laundry, vacuuming, cleaning countertops and his bathroom. (A.R. 217.) He does not do yardwork except for watering the garden because of "too much bending, lifting, standing, [and] walking." (A.R. 218.) He drives, goes out alone, and shops at Walmart for groceries about twice a month. (*Id.*) He has no problems getting along with family, friends, neighbors or others although he has "become more isolated because [he has] been unable to work and [has no] extra money to go place and socialize." (A.R. 220.) Plaintiff checked boxes to indicate that his conditions affecting squatting, standing, walking, sitting, kneeling, hearing, stair-climbing, seeing, completing tasks, and concentration and states he can walk 2-3 blocks before needing to rest "about one minute," can pay attention for "45 min to 1 hour," finishes what he starts, and follows directions well. (*Id.*) Plaintiff uses reading glasses bought at Walmart and a "night time breathing machine" when sleeping. (A.R. 221.)

//
//
//
//

Plaintiff's brother, Dean Richards, completed a Third Party Function Report[4] on March 9, 2011 that largely corroborated Plaintiff's own statements. Specifically, Plaintiff's brother stated that Plaintiff "does things around the house, like watches TV, reads, plays piano" and "complains about never sleeping enough." (A.R. 207-08.) The form indicates that Plaintiff has no problem with personal care, needs no help taking medication, prepares his own meals daily (though he stopped "prepar[ing] recipes, BBQ" and makes "frozen microwave meals, sandwiches.") (A.R. 208-09.) The form also indicates that Plaintiff does "his own laundry, makes his bed, waters yard," 2 or 3 times a week, drives, goes out alone, and shops in stores for food and personal care items every week or two for an hour or so. (A.R. 209-10.) According to his brother, Plaintiff's daily hobbies are reading, watching TV, and playing piano although "he doesn't do any of [the] things he used to do before." (A.R. 211.) The questionnaire states that Plaintiff talks on the phone and to his brother daily and attends church once a week on Sunday. (*Id.*) His brother likewise noted that Plaintiff has no problems getting along with family, friends, neighbors or others.

The ALJ determined that Plaintiff's regular participation in this range of activities does not support a finding that Plaintiff is capable only of light work. In fact, this information is substantial evidence in support of the ALJ's reason for rejecting Dr. Kaplan's limitation to light work as inconsistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4)("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Although Dr. Kaplan was the most recent medical source to provide an opinion, there is little evidence to suggest that Plaintiff's condition became progressively worse, so it is not necessary to give greater weight to Dr. Kaplan's testimony than to the medical sources that predated him. *Lester*, 81

---

[4] The ALJ discredited the report with respect to its assessment of the severity of Plaintiff's symptoms in relationship to his ability to work, because "the clinical or diagnostic medical evidence . . .does not support his statements," amongst other reasons. (A.R. 21.) *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)) (One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.")

14

F.3d at 833; *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) ("Where claimant's medical condition is progressively deteriorating, the most recent medical report is the most probative.")

### E. The ALJ Properly Rejected the Medical Opinion of Dr. Salek

The ALJ gave "little weight to the opinion[ ] of . . . the internal medicine consultative examiner, Dr. Salek" a board certified specialist in internal medicine who indicated that Plaintiff could only lift twenty pounds occasionally and ten pounds frequently.[5] (A.R. 23-24; 295-304.) The ALJ provided four specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Salek's opinion.

First, the ALJ found that objective evidence contradicted Dr. Salek's medical opinion. (A.R. 24.) *See Morgan*, 169 F.3d at 600-02 (inconsistency between a medical opinion and clinical findings is a proper basis for an ALJ's rejection of that opinion). As noted above, the medical evidence showed "minimal osteoarthritis of the hips, mild COPD symptoms improved with medications, and uncomplicated hepatitis C," (A.R. 23) and "generally unremarkable physical findings and generally unremarkable diagnostic findings, particularly only mild osteoarthritis and normal pulmonary function tests." (A.R. 24.) Although Plaintiff "reported tremors and double vision, the medical record does not support finding limitations due to these conditions." (A.R. 23.) On this basis, the ALJ concluded that none of the objective evidence supports Dr. Salek's limitation to lifting only 20 pounds occasionally and 10 pounds frequently.

Second, Dr. Salek's opinion was contradicted by his own contemporaneous findings because his examination revealed that Plaintiff's shoulders, elbows, wrists, hands, back,

---

[5] The remainder of Dr. Salek's assessment was largely congruent with the ALJ's RFC determination.

15

hips, knees, and ankles retained normal range of motion (A.R. 298-99); Plaintiff had intact sensation, reflexes, and cranial nerves (A.R. 300); Plaintiff walked normally, could stand on his heels and toes, and performed a finger-to-nose examination normally (*id*.); Plaintiff's straight leg raising test was negative and there was no tenderness to palpation in his back (A.R. 298-99); and Plaintiff got in and out of his chair without difficulty and had a mostly normal motor exam (A.R. 297). (A.R. 22.) *See Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (ALJ properly rejected medical opinion where doctor's opinion was contradicted by doctor's own contemporaneous findings). Dr. Salek also noted that the range of motion of Plaintiff's hips was "normal bilaterally," but that "[t]here is tenderness with moving," and Plaintiff had "difficulty performing tandem gait." (A.R. 299.) These findings, even with the tenderness in moving Plaintiff's hips, also do not support Dr. Salek's assessment that Plaintiff could lift only twenty pounds occasionally and ten pounds frequently. (A.R. 295-304.)

Furthermore, even though Dr. Salek noted that Plaintiff "tremble[d] and sh[ook] all over while doing this exam," and that Plaintiff had a tremor that was "most likely [an] essential tremor," Dr. Salek ultimately opined that the tremors would *not* interfere with Plaintiff's gross or fine manipulations, and that his motor exam was otherwise "normal." (A.R. 299-300.) Indeed, the lack impact of Plaintiff's tremors on his ability to work was further emphasized when Dr. Kaplan testified at the hearing that the essential tremors, while well-documented, were impliedly caused by anxiety and that it was "maybe not a serious impairment," because he could reach in all directions and the tremors did not impact his gross or fine manipulations.[6] (A.R. 42.)

Finally, Dr. Salek's assessment was also contradicted by other evidence including Plaintiff's activities of daily living which, as noted, demonstrated that Plaintiff was able to

---

[6] Although the ALJ rejected Dr. Kaplan's limitation to light work, he did find portions of Dr. Kaplan's testimony to be "acceptable." (A.R. 24.)

16

take care of his personal hygiene, prepare his meals, engage in hobbies like reading and playing music, perform household chores, shop for groceries (including carrying them into his home), and travel independently to visit family members. (A.R. 207-34.) Therefore, the ALJ's finding that Plaintiff's daily activities, as demonstrated by his hearing testimony and the questionnaires completed by Plaintiff and his brother, were inconsistent with Dr. Salek's assessed limitation of lifting only 20 pound occasionally and 10 pounds frequently, was supported by substantial evidence. *See Lunn*, 300 F. App'x at 525; *Urvina*, 1992 U.S. App. LEXIS 14958, at *8.

Accordingly, the Court finds no legal error in the ALJ's rejection of Dr. Salek's opinion where the ALJ provided numerous specific and legitimate reasons supported by substantial evidence in the record for doing so.

### F. The ALJ Properly Evaluated the Opinions of Drs. Cochran, Marselle, and Michelotti

The record also contains the opinions of several other physicians, including medical consultant Dr. Cochran; Dr. Robert A. Marselle, Psy.D. a psychiatrist and psychological consultative examiner; and consulting physician, Dr. V. Michelotti, M.D. Upon review of the objective medical record, the Court also finds no error in the ALJ's assessment of the medical opinions provided by these physicians.

The ALJ gave great weight to the opinion of Dr. Cochran, who provided a Physical RFC Assessment and assessed only mild limitations stemming from Plaintiff's diagnoses. (A.R. 305-12.) Plaintiff argues that the opinion of a non-examining doctor such as Dr. Cochran cannot by itself constitute substantial evidence that justifies an RFC determination, particularly when it contravenes the opinion of an examining physician such as Dr. Salek. *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1999). However, as Defendant points out,

17

an ALJ *may* rely on a non-examining physician's opinion in such an instance, so long as it is consistent with the record. *See* 20 C.F.R. §§ 404.1527(c)(4). In this case, the Court finds that the opinions of Dr. Cochran (based on her findings on November 23, 2011, and January 13, 2012. (A.R. 312, 322)) constitute substantial evidence in support of the ALJ's RFC determination, because they are consistent with record evidence such as the Plaintiff's objective medical test results, conservative treatment history, and daily activities. Plaintiff does not challenge any of this evidence.

Dr. Marselle conducted a complete consultative mental evaluation of Plaintiff. (A.R. 23; *see also* A.R. 324-327.) As to Plaintiff's psychological state, Dr. Marselle reported that Plaintiff "has never been in mental health treatment . . . has not seen a counselor or therapist . . . [and] has never been psychiatrically hospitalized. " (A.R. 325.) He diagnosed Plaintiff with a major depressive disorder, mild. (A.R. 327.) The ALJ summarized Dr. Marselle's findings and did not give great weight to those findings (A.R. 23), which concluded that Plaintiff's mental impairments were not severe (A.R. 327). The ALJ found Dr. Marselle's opinions consistent with the objective medical evidence, but also found that Dr. Marselle "failed to adequately consider Plaintiff's "subjective complaints of difficulties getting along with others and problems with memory and concentration." (A.R. 24.) The ALJ's RFC determination then took into account "the benign objective findings but also generously considered the [Plaintiff's] subjective complaints." (*Id*.) The Court finds no error in the ALJ's assessment of Dr. Marselle's opinion. Even if the ALJ erred in taking Plaintiff's subjective complaints into account over Dr. Marselle's objective findings, any such error was harmless because the ALJ's RFC determination incorporated Plaintiff's subjective complaints more comprehensively than would have otherwise been the case if the ALJ had considered Dr. Marselle's opinions alone.

Consulting physician, Dr. Michelotti provided opinions in a Case Analysis dated November 1, 2012, in which she opined that Plaintiff's mental limitations were nonsevere

and that Plaintiff's Physical RFC was a "medium level." (A.R. 439).   Plaintiff argues that the ALJ erred in affording great weight to Dr. Michelotti's opinions because her specialization was in pediatrics. (Joint Stip. at 6.)  Generally, the opinion of a specialist is given more weight than a non-specialist. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).  But in this case, Dr. Michelotti's area of specialty is not relevant to the disability determination for Plaintiff, a 58 year old man.   Still, even if Dr. Michelotti's opinion should receive little weight, rather than the great weight that ALJ afforded it, the ALJ's RFC determination was nevertheless supported by substantial evidence independent of Dr. Michelotti's medical source opinion.  Such evidence includes other specialist medical source opinions, Plaintiff's objective medical test results, his conservative treatment history, the effective management of his symptoms with medication, and Plaintiff's admitted participation in a robust range of daily activities.   Therefore, even if the ALJ erred in affording great weight to Dr. Michelotti's opinion, any such error was harmless.

Accordingly, viewing the record as a whole, the Court finds no legal error in the ALJ's decision, no grounds to reverse the decision, and no basis to remand this matter for further proceedings.

//
//
//
//
//
//
//
//
//
//
//

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is AFFIRMED.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiffs and for Defendant.

LET JUDGEMENT BE ENTERED ACCORDINGLY.

DATED: June 3, 2016

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE